IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JOHN RICE, JR. | § | |
| VS. | § | CIVIL ACTION NO. 1:11cv243 |
| UNITED STATES OF AMERICA | § | |

<u>MEMORANDUM OPINION</u>

John Rice, Jr., an inmate confined within the Bureau of Prisons, proceeding *pro se*, filed this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.

<u>Factual Background</u>

On February 21, 2008, a federal grand jury returned a three-count indictment against movant and five co-defendants. Movant and his co-defendants were charged with: (a) conspiring to commit carjacking; (b) carjacking and aiding and abetting cracking and (c) brandishing a firearm during and in relation to a crime of violence and aiding and abetting the brandishing of a firearm during and in relation to a crime of violence. A four-count superseding indictment added a charge against movant for possessing a firearm after having been convicted of a felony.

Following a jury trial, movant was convicted of all charges. He was sentenced to a total of 500 months imprisonment. The convictions and sentence were affirmed by the United States Court of Appeals for the Fifth Circuit. *United States v. Rice*, 607 F.3d 133 (5th Cir. 2010).

## Grounds for Review

Movant asserts the following grounds for review: (1) extrinsic evidence of prior convictions was improperly admitted into evidence; (2) voice identification evidence was improperly admitted into evidence; (3) the convictions were improperly obtained as a result of perjured testimony from the victim and (4) the government improperly failed to disclose exculpatory evidence.

## Factual Background

In its opinion, the Fifth Circuit summarized the facts surrounding this case as follows:

> One day in December 2007, [Sarah] Cormier and Rice joined Aldrain Booker, Keisha Guidry, Joshua Hayward, and William Stanton in search of people to rob. The group first went to a local bingo hall where Rice and Hayward discussed robbing a woman who had just won the big prize. They all piled into Guidry's car and Rice told Stanton, who was driving, to follow the woman home. When they arrived there, Rice retrieved his gun through the armrest and exited the vehicle. But by the time he reached the house, the garage door was almost closed, so he returned to the car, and the group drove away.
>
> Later that night, Cormier and Rice came up with a plan to order pizza to an abandoned house and then steal the delivery man's pizza, money, and car. Cormier called the pizza restaurant but learned that they did not deliver after 9 p.m.
>
> The group then decided to drive to a grocery store to get something to eat. When they reached the parking lot, Rice spotted an older couple, whom the group followed home. On the way, they discussed wrapping the couple in duct tape and taking their money and car. At the couple's house, Rice and Hayward exited the vehicle and ran toward their targets. As Rice and Hayward approached, the elderly man pulled out his phone and threatened to call the police. Rice and Hayward then retreated to Guidry's car.
>
> Next, the group drove to a convenience store at a gas station where one of Booker's friends, Daniel Reynolds, was working. After four members of the group entered the

2

store, Cormier asked Reynolds whether they could rob him and later split the profits. Reynolds seemed to think she was joking and disregarded the proposal.

Finally, only a few minutes later, Amanda Weeks approached the gas station in her car, and Rice ordered Stanton to park across the street so they could observe Weeks. After Weeks used her debit card to pay for gas, Rice told Stanton to follow her home so they could steal her money and car. While the car followed Weeks, Rice once again retrieved his gun from behind the armrest.

When Weeks arrived at her residence and opened her car door, she saw a man, later identified as Rice, walk up and point a gun at her head. He told her to get into the passenger seat, then shoved her into it. Rice drove Weeks to a nearby ATM and ordered her to switch seats and withdraw as much money as possible. He also told her not to do anything stupid and that he had "done this before." Weeks withdrew $200 and gave it to Rice.

Rice drove to a nearby credit union and told Weeks that he was keeping her car to wipe off fingerprints. He ordered her out of the car, told her to lie on the ground until he left, and drove away.

Throughout the incident, Stanton, Cormier, Booker, Hayward, and Guidry followed Rice and Weeks in Guidry's car. After Rice dropped off Weeks, the rest of the group stopped in front of him at an underpass. Rice gave Cormier $20, and Booker got in Weeks's car with Rice. They proceeded to take her car to an abandoned house, where the group stole various items from the car and wiped off the fingerprints. When they returned to Guidry's trailer, Rice took the gun inside, and Booker hid it under the sofa cushions.

After reviewing videotape from the gas station, police officers went to Guidry's trailer. When they entered, one officer observed Rice and Hayward pushing down into the couch cushions. He ordered them to stand up, and the other officers soon discovered the gun used to rob Weeks the night before.

Booker, Guidry, and Stanton gave written statements to the police regarding their involvement in the incident. They all indicated that Rice held the gun to Weeks's head and took her car and money. Cormier stated that she remembered visiting the gas station with the others but got tired of waiting and slept through the entire incident.

3

Analysis

There are four separate grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; and (4) the sentence is "otherwise subject to collateral attack."  *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

"Challenging a conviction and sentence with a section 2255 motion is 'fundamentally different from a direct appeal.'" *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (quoting *United States v. Dorbny*, 955 F.2d 990, 994 (5th Cir. 1992)).  Following conviction and exhaustion or waiver of any right to appeal, a criminal defendant is presumed to stand fairly and finally convicted. *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*) (1992).  "Thus, on collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude." *Samuels*, 59 F.3d at 528 (quoting *Shaid*, 937 F.2d at 232).  Relief under Section 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

*Grounds for Review Raised on Direct Appeal*

In his first three grounds for review, movant asserts his prior convictions were improperly admitted into evidence to show movant had a propensity to commit robbery, a voice identification was improperly admitted and the victim provided perjured testimony. Movant raised these grounds for review on direct appeal. In rejecting movant's first ground for review, the Fifth Circuit stated as follows:

> Rice argues that ... statements [during trial] exceeded the limited purpose for which evidence of his previous robberies was admitted and amounts to prosecutorial misconduct that affects his substantial rights.
>
> Rice's pre-trial objection was not sufficient to preserve the claim of prosecutorial misconduct. To preserve an argument for appeal, an objection must be contemporaneous to the alleged error. Rice made no objection to the prosecutor's comments during either the closing argument or rebuttal. Therefore, we review only for plain error.
>
> Rice has demonstrated that the prosecutor's comments regarding the use of extrinsic evidence to prove identity were error. [In one statement], the prosecutor argued that Rice was the only one who had been convicted of robbery, so the assailant's statement that he had "done this before" shows that Rice "is the person who held [the victim] at gunpoint." During the government's rebuttal, the prosecutor told the jury that it could use Rice's previous convictions to decide whether the robber in the present case was the only one in the group who had committed robberies before. Given that the court had specifically excluded identity as a proper purpose for introducing extrinsic evidence of the previous robberies, the prosecutor's suggestion that those robberies help to prove Rice was the carjacker constituted trial error.
>
> Even assuming *arguendo* that the error was plain, however, Rice cannot show that the remarks affected his substantial rights. Although the comments were erroneous, they were minimal and harmless in the context of the entire trial. The statements occupy only a few lines in a record that spans several thousand pages. More importantly, the prosecution presented overwhelming evidence that Rice was the

5

one who carjacked [the victim], including consistent statements and voice identification by the victim. There is nothing near a reasonable possibility that, without the prosecutor's statements, Rice would have been acquitted

of any charge. Therefore, the claim of prosecutorial misconduct does not survive plain error review.

In rejecting movant's second ground for review, the Fifth Circuit stated:

> Rice avers that [he victim's] voice identification testimony violated due process. For a particular identification to violate due process, it must be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."
>
> Several factors support the district court's finding that [the victim's] identification was reliable. First, she demonstrated a high level of certainty regarding her identification. Second, the evidence showed [the victim] was paying close attention to the perpetrator's voice during the crime. She testified that she responded immediately to his verbal commands and was able to describe in detail his distinctive way of speaking. Finally, although eight months elapsed between the incident and the identification, the district court correctly found that, given [the victim's] specific and vivid recollections, the passage of time did not give rise to a substantial likelihood of misidentification. Therefore [the victim's] testimony did not violate due process.

With respect to movant's third ground for review, the Fifth Circuit stated:

> During cross-examination, Rice questioned [the victim] about a photo lineup she viewed at the police station after the incident. Rice asked [the victim] whether she recognized the perpetrator in the picture at the station, and she responded, "Yes, but I don't believe it was documented." The next morning, Rice unsuccessfully requested a mistrial on the grounds that [the victim] had committed perjury, depriving him of a fair trial.
>
> Rice has a plausible argument that [the victim] whether intentionally or not, made false statements on the witness stand. She stated that, at the time of the lineup, she was able to identify the perpetrator in the picture. Sergeant Kevin White, however, testified that [the victim]

6

was unable to make a positive identification of Rice at that time. Although [the victim] insisted that she had made the identification, the remainder of her testimony indicates that she was never able to get a good look at the perpetrator's face.

[T]here is no evidence that the prosecution knowingly presented perjured testimony. [The victim's] allegedly perjured statements were not elicited by the government but instead came in response to Rice's cross-examination. Further, those statements conflicted with the case the prosecution was attempting to build, and their only likely effect was to undermine [the victim's] credibility. In any event, given the other overwhelming evidence of guilt, it is highly unlikely that [the victim's] misstatements had any effect on the verdict. The district court did not abuse its discretion in denying a new trial.

Issues decided adversely on direct appeal may not be reasserted in a motion to vacate. *United States v. McCollum*, 664 F.2d 56 (5th Cir. 1981); *Buckelew v. United States*, 575 F.2d 515 ($5^h$ Cir. 1978). "Section 2255 may not be used to secure a second direct appeal .... [A ground for review] may not be resurrected and urged anew; it is a thing adjudged and definitively resolved" once disposed of on direct appeal. *McCollum*, 664 F.2d at 59. As the Fifth Circuit rejected movant's first three grounds for review on direct appeal, movant may not reassert them in the current proceeding.

*Failure to Disclose Exculpatory Evidence*

Aldrain Booker testified at trial as a prosecution witness. Movant asserts the prosecution acted improperly when it failed to disclose that Mr. Booker had been convicted of crimes as a juvenile and also had adult convictions. He states these convictions could have been used to impeach Mr. Booker's credibility.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "the

7

supression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Supreme Court subsequently extended this principle to impeachment evidence, holding that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (quoting *Napue v. People of the State of Illinois*, 360 U.S. 264, 269 (1959)). To establish a *Brady* violation, a movant must prove that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant and (3) the evidence was material. *United States v. Snipe*, 388 F.3d 471, 477 (5th Cir. 2004). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The government did disclose Mr. Booker's three adult convictions for misdemeanor theft. This was done in a First Amended Motion *in Limine* filed by the government on July 31, 2008. Moreover, Mr. Booker acknowledged on direct examination that he had three prior convictions for misdemeanor theft. As the government informed movant of the adult convictions, and as the jury was made aware of the adult convictions, there was no *Brady* violation with

respect to the adult convictions.

With respect any juvenile conviction, movant has failed to establish Mr. Booker had any convictions as a juvenile or that the government was aware of any such convictions. At a hearing held on July 9, 2008, the government informed the court it did not have any information about any juvenile convictions. *Brady* does not require the government to seek out evidence in order to disclose it to a criminal defendant. As there is no indication in the record that the government was aware Mr. Booker had any juvenile convictions, it cannot be concluded the government was under an obligation to provide movant with information concerning the convictions. There was therefore no *Brady* violation with respect to any juvenile convictions.[1]

## Conclusion

For the reasons set forth above, this motion to vacate, set aside or correct sentence is without merit. A final judgment shall be entered denying the motion to vacate.

In addition, the court is of the opinion movant is not entitled to a certificate of appealability in this matter. An appeal from a judgment denying post-conviction collateral relief may not proceed unless a judge issues a certificate of

---

[1] Even if it were assumed Mr. Booker had juvenile convictions and that the government was aware of the convictions, there is not a reasonable probability the result of the proceeding would have been different if movant had been able to use juvenile convictions to impeach Mr. Booker's testimony. As the Fifth Circuit stated four times, the evidence against movant was overwhelming. Further, as noted above, the jury was informed Mr. Booker had three prior convictions for misdemeanor theft. As a result, the additional impeachment value of any juvenile convictions would have been minimal at best.

9

appealability. *See* 28 U.S.C. § 2253. The standard for issuing a certificate of appealability requires the movant to make a substantial showing of the denial of a federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Elizalde v. Dretke*, 362 F.3d 323, 328 (5th Cir. 2004). In order to make a substantial showing, the movant need not establish that he would prevail on the merits. Rather, he must demonstrate that the issues are subject to debate among jurists of reasons, that a court could resolve the issues in a different manner, or that the questions presented are worth of encouragement to proceed further. *See Slack*, 529 U.S. at 483-84. If the motion to vacate was dismissed on procedural grounds, the movant must show that jurists of reason would find it debatable: (1) whether the motion to vacate raises a valid claim of the denial of a constitutional right and (2) whether the district court was correct in its procedural ruling. *Id*. at 484; *Elizalde*, 362 F.3d at 328. Any doubt regarding whether to grant a certificate of appealability should be resolved in favor of the movant, and the severity of the penalty may be considered in making this determination. *See Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000).

In this case, the movant has failed to show that any of the issues raised in the motion to vacate, set aside or correct sentence are subject to debate among jurists of reason or could be resolved in a different manner. Nor has he shown that the issues raised are worthy of encouragement to proceed further. As a

result, a certificate of appealabiltiy shall not issue in this matter.

**SIGNED** this the **30** day of **September, 2014.**

_____
Thad Heartfield
United States District Judge